UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

    v.                                                                                  Criminal No. 13-3760 MCA

**HIRAM MARCELENO**,

    Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Hiram Marceleno's *Motion to Withdraw Plea of Guilty and Request for Evidentiary Hearing*. [Doc. 37] The Court conducted an evidentiary hearing on Defendant's motion on December 1, 2014 and December 16, 2014. Having considered the parties' submissions, the relevant case law, and otherwise being fully advised in the premises, the Court will deny Defendant's motion.

**I.**    **PROCEDURAL BACKGROUND**

Defendant Hiram Marceleno was charged with the crime of reentering the United States after removal and without authorization in violation of 8 U.S.C. § 1326(a) and (b). [Doc. 9] Although Defendant initially entered a plea of not guilty on November 25,

2013, he moved to change his plea to guilty, without the benefit of a plea agreement. [Docs. 11 and 19]

On February 6, 2014, this Court conducted a detailed and thorough colloquy with Defendant, in the presence of his attorney, to determine whether his guilty plea was knowing, intelligent, and voluntary. [Doc. 36] Defendant assured the Court that he understood the charges against him, that he had consulted with his attorney, that he was satisfied with his legal representation, and that his guilty plea was not the product of force or coercion. [Doc. 36 at 6-7] Additionally, the Court informed Defendant that he had a right to a jury trial, that the Government bore the burden to prove each essential element of the crime charged beyond a reasonable doubt, that he had a right to an attorney, that he had a right to present his own evidence and witnesses, and that he had a right not to testify on his own behalf or to present any evidence at all. [Id. at 7-9] The factual basis for the charged crime was explained to Defendant and the fact that the maximum penalty was up to "20 years imprisonment; $250,000 fine; three years supervised release; and a $100 assessment." [Id. at 9-10] After the colloquy, Defendant entered a plea of guilty and the Court found him:

> fully competent and capable of entering an informed plea to the charge set forth in the indictment, that he is aware of the nature of the charge and the consequences of his plea; and that his plea of guilty to the indictment here is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense charged.

[Id. at 11-12] Therefore, the Court accepted Defendant's guilty plea and adjudicated him guilty of the charged offense. [Id. at 12]

On June 24, 2014, Defendant filed the present *Motion to Withdraw Plea of Guilty and Request for Evidentiary Hearing*, alleging that he should be permitted to withdraw his guilty plea because he is actually innocent of the charged crime.  [Doc. 37] Specifically, Defendant alleges that: (1) he lacked the requisite mens rea to commit the crime of reentry of a removed alien and (2) he reentered the United States under duress. The Court conducted an evidentiary hearing on Defendant's motion on December 1, 2014 and December 16, 2014.  On the basis of the evidence adduced at the evidentiary hearing, the Court makes the following findings of fact.

## II.     FINDINGS OF FACT [1]

1.     Defendant is a Mexican citizen, who immigrated to the United States when he was three years old.  [Rough Draft Tr. 12/1/14 at 90]

2.     In 2013, Defendant suffered from a number of health conditions, including high blood pressure, diabetes, and neuropathy.  [Id. at 85-86]

3.     In August of 2013, Defendant was deported from the United States to Mexico following a state felony conviction in Texas.  [Id. at 87]

4.     After his deportation, Defendant contacted his probation officer in Collin County, Texas to inquire about fulfilling his community service obligation.  [Id. at 91] Defendant's probation officer instructed him to go to any church or police station to complete his community service hours.  [Id.]

---

[1] The Court's citations to the transcripts of the hearings refer to the Court Reporter's original, unedited versions (rough draft).  Any final transcripts may contain slightly different page and/or line numbers.

5.      Defendant went to churches in Mexico to inquire about volunteer opportunities. [Id. at 92]

6.      In September of 2013, a man approached Defendant and said he could help him complete his community service obligation. [Id. at 93] The man asked Defendant "How much money you got?" and Defendant replied that he had $200. [Id. at 94]

7.      Although Defendant understood that it was illegal to pay money to complete his community service obligation, he decided that it was "not that much money to pay to— you know, for him to help me out with community service hours." [Id.]

8.      Defendant joined the man in his car and they proceeded to a house located in the mountains. [Id.]

9.      Defendant stayed at the house in the mountains for approximately a week. He was provided with food, shelter, and a bed. [Id. at 142-43] In exchange, he carried a ladder through a tunnel and touched it against the border fence with the United States approximately every other day. [Id. at 95-101] This "ruse" described by Defendant sought to divert the attention of Border Patrol Agents away from another area. However, per the testimony of Border Patrol Agent Carlos Lerma, the Border Patrol is familiar with these diversionary tactics and is not fooled by them. [Rough Draft Tr. 12/16/14 at 31]

10.     The Court finds that Defendant was not forced to stay at the house in the mountains against his will. To the extent that Defendant implied otherwise in his testimony, the Court does not find Defendant's testimony to be credible.

11.     Defendant's testimony regarding the events that occurred in the early morning hours of September 12, 2013 was vague, inconsistent, and evasive. During his testimony,

the Court observed that Defendant was vague and evasive in his responses with respect to his recollection of certain events and about what he may have said to Border Patrol Agents after he was apprehended.

12.	Defendant admitted during his testimony that he has problems with his memory, i.e., recollecting events.  [Rough Draft Tr. 12/16/14 at 19-20]

13.	Initially, Defendant testified that he had assisted his attorney in writing and drafting the pending Motion and he further testified that he had reviewed it prior to filing. [Rough Draft Tr. 12/1/14 at 139-40]  However, after the Government pointed out some inconsistencies between the facts alleged in the pending Motion and Defendant's in-court testimony, Defendant testified that he had never seen the motion before.  [Rough Draft Tr. 12/1/14 at 147-49; Rough Draft Tr. 12/16/14 at 25-28]

14.	In the early morning hours of September 12, 2013, at approximately 1:00 or 2:00 a.m., Defendant and five other men, two skinny individuals and three others, left the house in the mountains and walked up the hill toward the border with the United States. [Id. at 38; Rough Draft Tr. 12/1/14 at 101-102]

15.	Defendant testified that when he informed one of the skinny individuals that his health was too poor to proceed, the man threatened to stab him and said that they would "find [him] out there somewhere."  [Rough Draft Tr. 12/1/14 at 105, 147-48]  However, Defendant did not see a knife or any other weapon in the skinny individual's possession. [Id. at 148]

16.	The Court does not find Defendant's testimony regarding the threat to be credible.

17.  When they reached the top of the hill, the two skinny individuals spent some time performing reconnaissance on the area. [Rough Draft Tr. 12/16/14 at 7]

18.  Afterward, Defendant and the five men slid down a steep hill to the circular roadway of a brick company on the United States side of the international border. [Rough Draft Tr. 12/1/14 at 108, 165-66; Gov't Ex. 8]

19.  Defendant fled with the three other individuals, while the two skinny men, including the man who allegedly had threatened to stab Defendant, stayed behind at the bottom of the hill and did not follow Defendant. [Rough Draft Tr. 12/16/14 at 13-14]

20.  Defendant was unable to continue and he collapsed by the side of a building. [Rough Draft 12/1/14 at 122; Rough Draft 12/16/14 at 48; Gov't Ex. 2]

21.  Defendant was unable to state with any degree of specificity where he was found and apprehended by Border Patrol Agents; his testimony waivered back and forth, from location to location on this point.

22.  Although Defendant was uncertain as to his precise location, he was aware that he had crossed the border into the United States. [Rough Draft Tr. 12/1/14 at 122-23, 134] It is undisputed that Defendant was found in the United States.

23.  United States Border Patrol Agent Antonio Molina found Defendant. [Rough Draft Tr. 12/16/14 at 37-48; Gov't Ex. 2]

24.  When he was found, Defendant had American money, Mexican money, and a cellular telephone and charger in his possession. [Rough Draft Tr. 12/1/14 at 146-47; Rough Draft Tr. 12/16/14 at 59]

25.     Defendant was advised of his <u>Miranda</u> rights and interviewed by Border Patrol Agents.  [Rough Draft Tr. 12/16/14 at 61; Gov't Ex. 9]

26.     The Court finds the testimony of Border Patrol Agents Antonio Molina, Carlos Lerma, and Kevin McIlwee to be credible.

27.     When apprehended and later interrogated, Defendant did not tell Border Patrol Agents that he was in fear for his life, that he had been threatened, that he had been forced to cross the border, or that he was under duress.

28.     Defendant did not inform the Border Patrol Agents who interviewed him that he had been forced to cross the border against his will.  [Rough Draft Tr. 12/16/14 at 17-18, 50-51, 59, 62-63; Gov't Ex. 9]

29.     When asked by Border Patrol Agents about his ultimate destination, Defendant responded that he was heading to Fort Worth, Texas.  [Rough Draft Tr. 12/1/14 at 125-26; Rough Draft Tr. 12/16/14 at 61-62, Gov't Ex. 9]

30.     Defendant testified that he meant he was from Fort Worth, Texas and that he was confused at the time of the interview.  [Rough Draft Tr. 12/1/14 at 123; Rough Draft Tr. 12/16/14 at 21]  The Court does not find Defendant's testimony to be credible.

31.     When asked by Border Patrol Agents whether he had any fear of returning to Mexico, Defendant responded in the negative.  [Rough Draft Tr. 12/16/14 at 60; Gov't Ex. 9]

32.     Consistent with the expert testimony of United States Border Patrol Agent Carlos Lerma, the Court finds that alien smuggling organizations in the area typically do not force adults to cross the border against their will or use adults as bait.  [Rough Draft Tr.

12/16/14 at 29-33] Thus, the events as described by Defendant in his testimony with respect to his crossing the border are not consistent with alien smuggling.

33. On the basis of the foregoing evidence, the Court finds that Defendant intentionally crossed the border between Mexico and the United States of his own free will.

### III.   STANDARD

Fed. R. Crim. Proc. 11(d)(2)(B) provides that "[a] defendant may withdraw a plea of guilty or nolo contendere . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. Proc. 11(d)(2)(B). "The defendant bears the burden of establishing a 'fair and just reason'" for the withdrawal of a guilty plea. United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007) (citation omitted). "Although a motion to withdraw a plea prior to sentencing should be 'freely allowed,'" a district court's decision will not be reversed "unless the defendant can show that the court acted 'unjustly or unfairly.'" Id. at 1213-14 (citation omitted). In determining whether to permit a defendant to withdraw a guilty plea prior to sentencing, the Court should consider the following seven factors:

> (1) whether the defendant has asserted his innocence, (2) prejudice to the government, (3) delay in filing defendant's motion, (4) inconvenience to the court, (5) defendant's assistance of counsel, (6) whether the plea is knowing and voluntary, and (7) waste of judicial resources.

Id. at 1214 (internal quotation marks and citation omitted). The second, third, fourth, and seventh factors (prejudice to the government, timing of the motion, inconvenience to the

court and waste of judicial resources) "speak to the potential burden on the government and the court, rather than the defendant's *reason* for withdrawal." Id. at 1217 (emphasis in original).  Therefore, even if these "factors weigh in defendant's favor, they cannot establish a fair and just reason for withdrawal." Id.; see United States v. Byrum, 567 F.3d 1255, 1265 (10th Cir. 2009) (holding that "a court need not address the prejudice to the government, the timing of the defendant's motion, the inconvenience to the court, or the waste of judicial resources factors 'unless the defendant establishes a fair and just reason for withdrawing his guilty plea' in the first instance." (citation omitted)).

      A district court does not abuse its discretion in refusing a motion to withdraw a guilty plea when the motion "is predicated on an intentional falsehood."  United States .v Soto, 660 F3d 1264, 1268 (10th Cir. 2011).  In Soto, our Circuit explained that:

> Fairness and justice do not dictate that a party may compel any judicial action on the basis of a lie—let alone an action that would require the court, the government, as well as victims and witnesses to endure the significant cost, time, and all the other tribulations associated with a trial.  Mistake or confusion, in the interests of fairness and justice, may merit more latitude from a court.  But an intentional falsehood under oath about such a material matter as a plea agreement is not something any district court is forced to countenance.

Id.

## IV. DISCUSSION

### A. *Assertion of Innocence*

      "[A] defendant may satisfy the assertion-of-innocence factor by asserting legal innocence." Hamilton, 510 F.3d at 1214.  "[T]he mere assertion of a legal defense is insufficient; the defendant must present a *credible* claim of legal innocence."  Id.

9

(emphasis in original).  "In other words, the defendant must make a *factual argument* that supports a legally cognizable defense."  Id. (emphasis in original).

In his motion, Defendant alleges that he is actually innocent of the charged crime because he lacked the requisite *mens rea* to commit the crime of illegal reentry of a removed alien and he reentered the country under duress.  The Court will address each of these allegations in turn.

*1.*      *Mens Rea*

"[T]he only *mens rea* required to establish a violation under Section 1326's provision prohibiting those previously denied the right to be in the United States from 'enter[ing]' the country is a showing 'that the defendant's *acts* were intentional.  No intent to break the law—whether characterized as 'specific intent' or 'general intent'— must be proved."  United States v. Hernandez-Hernandez, 519 F.3d 1236, 1239 (10th Cir. 2008) (quoting United States v. Miranda-Enriquez, 842 F.2d 1211, 1212 (10th Cir. 1988) (alteration and emphasis in original)).  Thus, to secure a conviction under Section 1326, "the Government must prove the defendant acted only with the intent to do the act of entering the country."  United States v. Sierra-Ledesma, 645 F.3d 1213, 1221 (10th Cir. 2011) (internal quotation marks and citation omitted).

Our Circuit has held that "an alien's presence in the United States gives rise to a natural, common sense inference that his or her presence was intentional in the very limited, Section 1326 sense.  After all, those crossing the border usually do so intending their own physical actions."  Hernandez-Hernandez, 519 F.3d at 1241.  However, "this inference can be overcome; while most border crossings are surely intentional in the

10

Section 1326 sense, neither can [the Court] deny that the trafficking of human beings against their will across international boundaries is a reality. But, to dispel the inference, the alien would have to demonstrate that one of the speculative possibilities of involuntary entry had actually taken place." Id. (internal quotation marks and citation omitted).

Based on the evidence presented at the evidentiary hearings conducted on December 1, 2014 and December 16, 2014, the Court finds that Defendant intended the physical act of crossing the border between Mexico and the United States. Defendant's testimony to the contrary is not credible and, therefore, is insufficient to compel the withdrawal of his guilty plea. See Soto, 660 F3d at 1268.

2.   *Duress*

Duress is an affirmative defense to the crime of illegal reentry of a removed alien. See United States v. Portillo-Vega, 478 F.3d 1194 (10th Cir. 2007). "The defendant bears the burden of proving this defense by a preponderance of the evidence." Id. at 1197 (citing Dixon v. United States, 548 U.S. 1 (2006)). "A duress defense requires the establishment of three elements: (1) an immediate threat of death or serious bodily injury, (2) a well-grounded fear that the threat will be carried out, and (3) no reasonable opportunity to escape the threatened harm." Id. (internal quotation marks and citation omitted). "A defendant must carry his burden on each of the elements; if the evidence is insufficient on even one element, the court and jury need not be burdened with testimony supporting other elements of the defense." Id. at 1197-98 (internal quotation marks and citation omitted).

"[I]f there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm, the defense[ ] will fail." United States v. Bailey, 444 U.S. 394, 410 (1980) (internal quotation marks and citation omitted). Additionally, illegal reentry after removal "is a continuing offense" that "occurs not just when the previously-deported individual steps across the border without permission to do so but continues as long as that individual remains in the United States." Portillo-Vega, 478 F.3d at 1201. "Thus, to successfully raise a duress defense, [the defendant has] to proffer evidence of a bona fide effort to surrender . . . as soon as the claimed duress . . . had lost its coercive force." Id.

Defendant's affirmative defense of duress fails because the Court finds that Defendant was not threatened with death or serious bodily harm. During his week-long stay at the house in the mountains and his early morning trek across the border on September 12, 2013, Defendant only identified one alleged threat: that he would be stabbed and that they would "find [him] out there somewhere." [Rough Draft Tr. 12/1/14 at 105, 147-48] The Court does not find Defendant's testimony regarding this threat to be credible. See Soto, 660 F3d at 1268. Rather, the Court finds that Defendant intentionally crossed the border between United States and Mexico of his own free will in order to travel to Fort Worth, Texas. Because Defendant has failed to fulfill his burden of proof on the affirmative defense of duress, the assertion-of-innocence factor does not weigh in Defendant's favor.

B.     *Assistance of Counsel*

Defendant has not raised an ineffective assistance of counsel claim, nor has he alleged that he is dissatisfied with the advice provided by his attorney. Therefore, this factor weighs against Defendant.

C.      *Voluntary and Knowing Plea*

"To be valid, a guilty plea must represent a voluntary and intelligent choice among the alternative courses of action open to the defendant." United States v. Muhammed, 747 F.3d 1234, 1239 (10th Cir. 2014) (quoting United States v. Dunbar, 718 F.3d 1268, 1279 (10th Cir. 2013)). The validity of a guilty plea is generally a question of law, but resolution of the legal issue may depend on findings of fact. See id. at 1240.

The Court conducted a detailed and thorough plea colloquy before accepting Defendant's guilty plea. [Doc. 36] Defendant was informed of his right to a trial by jury, the factual basis for the charges against him, and the maximum penalty that he faced. The Court found Defendant "fully competent and capable of entering an informed plea to the charge set forth in the indictment" and that his "plea of guilty to the indictment here is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense charged." [Doc. 36 at 11-12]

Defendant concedes that his plea was voluntary because it "was not forced in any way," but nonetheless argues that his plea was unknowing because "he pleaded under a mistake regarding whether he had any applicable legal defenses." [Doc. 37 at 14] "A guilty plea entered upon the advice of counsel is invalid if the plea was coerced, or if the advice of defendant's counsel was not within the range of competence demanded of attorneys in criminal cases." United States v. Carr, 80 F.3d 413, 416 (10th Cir.1996)

13

(citation omitted).  Defendant does not allege that the advice of his counsel regarding the viability of his duress defense was outside the range of competence demanded of attorneys in criminal cases.  Indeed, Defendant's counsel is correct that the duress defense is difficult to establish, given the continuing nature of the crime of illegal reentry of a removed alien and the burden on the defendant to prove, by a preponderance of the evidence, each of the essential elements of the defense.  See Portillo-Vega, 478 F.3d at 1197-1202.  Therefore, the Court concludes that Defendant's guilty plea was knowing, intelligent, and voluntary.

### D.     *Remaining Factors*

The Court need not address the remaining factors, because Defendant has failed to establish a fair and just reason for the withdrawal of his guilty plea.  See Hamilton, 510 F.3d at 1217.

### V.     CONCLUSION

For the foregoing reasons, the Court concludes that Defendant has failed to establish a fair and just reason for the withdrawal of his guilty plea.

**IT IS THEREFORE ORDERED** that Defendant's *Motion to Withdraw Plea of Guilty and Request for Evidentiary Hearing* [Doc. 37] is **DENIED**.

**SO ORDERED** this 15th day of January, 2015, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
Chief United States District Judge